IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KEVIN HAILEY and TERRENCE CROWDER, | HON. JEROME B. SIMANDLE |
| Plaintiffs, | Civil No. 01-3967 (JBS/JS) |
| v. | **OPINION** |
| CITY OF CAMDEN, et al., | |
| Defendants. | |

APPEARANCES:

Gregg L. Zeff, Esq.
LAW FIRM OF GREGG L. ZEFF
100 Century Parkway
Suite 305
Mt. Laurel, NJ 08054
    Counsel for Plaintiffs Kevin Hailey and Terrence Crowder

John C. Eastlack, Jr., Esq.
HOLSTON, MACDONALD, UZDAVINIS & ZIEGLER, PC
66 Euclid Street
P.O. Box 358
Woodbury, NJ 08096
    Counsel for Defendants City of Camden, Herbert Leary, and
    Joseph Marini

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

In advance of a retrial of aspects of this civil rights litigation, the Court is presented with Plaintiffs' motion for partial summary judgment [Docket Item 179] and Defendants' motion in limine [Docket Item 185].  Plaintiffs' motion argues that under the doctrine of collateral estoppel the only liability issue to be retried is whether the municipality of Camden can be held liable for the hostile work environment Plaintiffs were

subjected to while employed by the Camden Fire Department. Defendants' motion seeks to preclude evidence of discrimination and retaliation after August 20, 2001, when Plaintiffs filed their complaint in this action.  Defendants also maintain that Plaintiffs are bound by the amount of compensatory damages calculated in their first trial.  For the reasons discussed below, the Court will grant Plaintiffs' motion for partial summary judgment, but hold that Plaintiffs may not recover additional compensatory damages for hostile environment under 42 U.S.C. §§ 1981 and 1983 beyond what they were awarded under NJLAD in their first trial.  The Court will deny Defendants' motion <u>in</u> <u>limine</u> as presented, but will prohibit Plaintiffs from presenting evidence of discrimination and retaliation that arose after the jury verdict in their first trial on December 9, 2004.

## II.  BACKGROUND

This action was brought on August 20, 2001 by Plaintiffs Kevin Hailey and Terrence Crowder (collectively, "Plaintiffs") against Defendants City of Camden, former Fire Chief Herbert Leary, and present Fire Chief Joseph Marini (collectively, "Defendants"), alleging racial discrimination and retaliation under Sections 1981 and 1983 of the Civil Rights Act of 1871, 42 U.S.C. §§ 1981, 1983, and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1 to -49.[1]

---

[1] Plaintiffs also alleged, but later voluntarily dismissed, violations of Title VII of the Civil Rights Act of 1964.

Though previously tried by a jury and decided in favor of
Plaintiffs as to all claims against all Defendants, it is now
scheduled for a new jury trial solely on Plaintiffs' federal
claims of race discrimination under 42 U.S.C. §§ 1981 and 1983
(failure to promote[2] and hostile work environment) against the
City of Camden and to determine punitive damages, if any, against
the City of Camden under NJLAD and against the individual
defendants under Sections 1981, 1983 and NJLAD.  Its "long and
tortured past" leading to the forthcoming partial retrial is
described in detail in the Court's April 29, 2009 Opinion and
Order, Hailey v. City of Camden, --- F. Supp. 2d ----, 2009 WL
1228492 (D.N.J. 2009) ("Hailey II"), and the Court will set out
only those facts and procedural history necessary to decide the
matters presently before the Court.

Plaintiffs' claims were tried by consent pursuant to 28
U.S.C. § 636(c) before the former Magistrate Judge and presented
to a jury over a period of three weeks in November and December
2004.  Before deliberating, the Magistrate Judge gave the jury
the following charge regarding Plaintiffs' NJLAD claim for
hostile work environment against the City of Camden:

In order to make out an actionable hostile work

---

[2] Plaintiffs' motion for partial summary judgment seeks
estoppel against Camden only as to the facts found by the jury's
NJLAD verdict as to hostile work environment.  Whether
Plaintiffs' remaining claim for failure to promote should receive
similar treatment is not before the Court in this motion and is
not decided.

> environment claim under the New Jersey Law Against
> Discrimination, a plaintiff must prove that the
> conduct of which they complain:
>> (1) would not have occurred but for their
>> race; and
>> (2) that it was severe or pervasive enough to
>> make a
>> (3) reasonable African American would believe
>> that
>> (4) the conditions of his employment were
>> altered and his work environment was hostile
>> or abusive

[Docket Item 75, Jury Charge]. With regards to the NJLAD race discrimination claims, the jury found against all Defendants and awarded lost wages to each plaintiff in the amounts of $116,000 as to Crowder and $70,000 as to Hailey (by indicating "SEE ABOVE" in reference to the lost wages award under Sections 1981 and 1983) against each defendant and $1 for all other losses. The jury likewise found against all Defendants on Plaintiffs' NJLAD hostile work environment claims, similarly awarding the same amount ("SEE ABOVE") of lost wages to each plaintiff against each defendant. In addition, the jury awarded Crowder $50,000 against the City of Camden, $30,000 against Leary, and $20,000 against Marini for other losses under his NJLAD hostile work environment claim. The jury awarded Hailey $50,000 against the City of Camden, $20,000 against Leary, and $30,000 against Marini for other losses on his NJLAD hostile work environment claim.

The jury similarly found in favor of both Plaintiffs against all Defendants on their race discrimination claims under Sections 1981 and 1983, awarding Crowder $116,000 and Hailey $70,000 in

lost wages, and both $1 for all other losses.  The jury found in favor of both Plaintiffs against the individual defendants Leary and Marini for their federal First Amendment claims, indicating "SEE ABOVE" for each on lost wages (referencing the amount under the federal race discrimination claims), and awarding them each $1 for all other losses.

Finally, the jury determined that the City of Camden should pay Crowder $350,000 and Hailey $300,000 in punitive damages without distinguishing between federal and state claims, but did not award the Plaintiffs punitive damages against the individual defendants.

After extensive post-trial motion practice the Magistrate Judge affirmed all aspects of the judgment against all Defendants except that he ordered a retrial as to Plaintiffs' federal claims of race discrimination against the City of Camden, as well as a new trial on the issue of punitive damages against the City of Camden under NJLAD and against the individual Defendants under Sections 1981 and 1983 and NJLAD.  Hailey v. City of Camden, No. 01-3967, 2006 WL 1875402 (D.N.J. July 5, 2006) ("Hailey I").  In Hailey II, this Court (as the successor Judge), reaffirmed the Magistrate Judge's decision in Hailey I with only slight modification, leaving the same issues to be retried.  Hailey II, 2009 WL 1228492, at *20.  Among the issues decided by Hailey I and reaffirmed by Hailey II was the rejection of Defendants' argument that the Magistrate Judge had erred by permitting

Plaintiffs to present evidence of discrimination and retaliation occurring after August 20, 2001, when Plaintiffs' complaint was filed, on the grounds that Plaintiffs did not make allegations of continuing violations in either their complaint or the Joint Final Pretrial Order ("JFPO"). Hailey I, 2006 WL 1875402, at *8-10. In denying Defendants' motion for a new trial on this ground, the Magistrate Judge found that Plaintiffs had sufficiently alleged continuing violations in their complaint as well as the JFPO, that Defendants themselves offered evidence of post-August 20, 2001 events, and finally that the only objection raised to such evidence was argument made at trial that the evidence was "irrelevant." Id. This Court reaffirmed this decision, among others, in Hailey II. 2009 WL 1228492, at *20 n.8.

The verdicts in favor of Plaintiffs made final by the Court in Hailey II, are Plaintiffs' NJLAD claims for race discrimination and hostile work environment against all Defendants, Plaintiffs' federal race discrimination claims against Leary and Marini, and Plaintiffs' federal First Amendment claims against Leary and Marini.

On June 26, 2009, Plaintiffs filed their motion for partial summary judgment and on July 28, 2009, Defendants submitted their motion in limine. The Court heard oral argument on August 17, 2009 and reserved judgment. The retrial on this matter is scheduled for September 21, 2009.

6

## III. DISCUSSION

### A.    Collateral Estoppel and Hostile Work Environment

Plaintiffs move for partial summary judgment pursuant to Rule 56(d) arguing that the doctrine of collateral estoppel requires the Court to find that all aspects of Plaintiffs' claim for hostile work environment against the City of Camden should be deemed established except for the requirement that Plaintiffs prove municipal liability for that hostile work environment. Specifically, Plaintiffs argue that the jury in the first trial, which found in favor of Plaintiffs and against the City of Camden on their NJLAD hostile work environment claim, necessarily decided all but the municipal liability element of Plaintiffs' federal hostile work environment claims.  Defendants respond generally that the analysis for Plaintiffs' federal hostile work environment claims is sufficiently different from Plaintiffs' NJLAD hostile work environment claims so that there can be no estoppel.  The Court agrees with Plaintiffs and will preclude Defendants from challenging the determination that Plaintiffs have endured a hostile work environment at the Camden Fire Department.

The doctrine of collateral estoppel is intended to avoid repetitive litigation, permit parties to rely on prior judgments, and allow an adversary a sense of repose following the resolution of an issue by the courts.  18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 4416

7

(2d ed. 2002).

> Issue preclusion, or collateral estoppel, prevents
> parties from relitigating an issue that has already
> been actually litigated.  The prerequisites for the
> application of issue preclusion are satisfied when:
> (1) the issue sought to be precluded is the same as
> that involved in the prior action; (2) that issue
> was actually litigated; (3) it was determined by a
> final and valid judgment; and (4) the determination
> was essential to the prior judgment.

Peloro v. United States, 488 F.3d 163, 174-75 (3d Cir. 2007)

(quoting Burlington Northern Railroad Co. v. Hyundai Merch.

Marine Co., 63 F.3d 1227, 1231-32 (3d Cir. 1995)) (internal

punctuation omitted).  The Third Circuit "follow[s] the federal

rule that the law of the issuing court - here, federal law -

determines the preclusive effects of a prior judgment."  Id. at

175 n.11.  The Court will address each prong in turn.

It is the first prong of the collateral estoppel analysis to

which Defendants raise their only objection.  Defendants

correctly argue that the analysis for liability under Sections

1981 and 1983 is significantly different than the requirements of

NJLAD, because in order to succeed on their federal claims

against the City Plaintiffs must show that the municipality (and

not the State) through the conduct of a final decisionmaker and

by either policy or custom produced the hostile work environment.

Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694

(1978).  Plaintiffs do not disagree, but instead maintain that

the question of whether Plaintiffs were subjected to a hostile

work environment was previously litigated in Plaintiffs' favor

8

against the City upon their NJLAD claim, and the only remaining
issue is whether the municipality can be held liable for that
injury under Sections 1981 and 1983.

Issues are sufficiently similar to permit collateral
estoppel when "the same general legal rules govern both cases and
that the facts of both cases are indistinguishable as measured by
those rules." Suppan v. Dadonna, 203 F.3d 228, 233 (3d Cir.
2000) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward
H. Cooper, Federal Practice and Procedure § 4425 (1981)).  "To
defeat a finding of identity of the issues for preclusion
purposes, the difference in the applicable legal standards must
be substantial." Hitchens v. County of Montgomery, 98 F. App'x
106, 112 (3d Cir. 2004) (quoting Raytech Corp. v. White, 54 F.3d
187, 191 (3d Cir. 1995)).

As applied to the present case, Plaintiffs' claim that they
were subjected to a hostile work environment prohibited under
Sections 1981 and 1983 involves the same general legal rules and
the exact same facts as those governing the jury's determination
that Plaintiffs suffered a hostile work environment for which the
City was responsible as the employer under NJLAD.  To establish a
hostile work environment under Section 1981 (for which the Third
Circuit uses the same standard as Title VII), a plaintiff must
show that:

> (1) he suffered intentional discrimination because
> of his membership in a protected class; (2) the
> discrimination was pervasive and regular; (3) the

9

> discrimination detrimentally affected [him]; [and]
> (4) the discrimination would detrimentally affect a
> reasonable person of the same protected class in
> that position.[3]

Verdin v. Weeks Marine Inc., 124 F. App'x 92, 95-96 (3d Cir.

2005); see Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006),

abrogated on other grounds by Burlington N. and Santa Fe Ry. Co.

v. White, 548 U.S. 53 (2006).

Assuming, as this Court must, that the jury followed the

clear instructions given to it, United States v. Hernandez, 176

F.3d 719, 738 (3d Cir. 1999), the jury in Plaintiffs' first trial

determined that the conduct Plaintiffs complained of in the

Camden Fire Department (as perpetrated by the present and former

fire chiefs Marini and Leary, among others) would not have

occurred but for their race and that this conduct was severe or

pervasive enough to make a reasonable African American believe

that the conditions of his employment were altered and his work

environment was hostile or abusive.  These findings satisfy the

elements of a hostile work environment claim under Section 1981

as well.  See Verdin, 124 F. App'x at 95-96.  Both this circuit

and the New Jersey courts have long recognized the symmetry

between discrimination claims, including hostile work environment

---

[3] The fifth element of a Title VII claim, respondeat
superior liability, is not applicable to a claim under Section
1981 and 1983, where there is no respondeat superior liability
and instead the plaintiff must prove that a policy or custom of
the municipality caused the hostile work environment.  McGovern
v. City of Philadelphia, 554 F.3d 114, 121 (3d Cir. 2009);
Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

claims, under NJLAD and Section 1981 (or Title VII).  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1087-88 (3d Cir.1996) (holding that unlawful discrimination claims, including hostile work environment, under NJLAD "parallel" Title VII claims); McKenna v. Pacific Rail Serv., 32 F.3d 820, 827 (3d Cir. 1994) ("The New Jersey Supreme Court has generally looked to standards developed under federal anti-discrimination law for guidance in construing the LAD."); Grigoletti v. Ortho Pharmaceutical Corp., 570 A.2d 903, 912 (N.J. 1990) ("We have recognized a . . . need to harmonize our LAD with Title VII and have borrowed heavily from the federal experience to assure some reasonable degree of symmetry and uniformity.").  As a consequence, when the jury found that Plaintiffs endured a hostile work environment under NJLAD for which the City of Camden was liable as the employer they likewise found that Plaintiffs suffered a hostile work environment under federal anti-discrimination law to satisfy the first prong of collateral estoppel as to the defendant City of Camden.

It matters not, despite Defendants' arguments, that Plaintiffs will also have to prove municipal liability for that abuse.  The Court can see no reason why Plaintiffs should have to prove, once again, that they suffered a hostile work environment in addition to attempting to show that the municipality should be held liable for that abuse under the theory of decisionmaker

11

liability.[4]  This additional element to Plaintiffs' federal
claims against the City does not alter the other elements of that
claim.  See Public Serv. Mut. Ins. Co. v. Cohen, 616 F.2d 704,
708 (3d Cir. 1980) ("The fact that an issue arises in a slightly
different context does not necessarily mean that collateral
estoppel is inapplicable.").

The remaining prongs are easily addressed.  The issue of
whether the Camden Fire Department was a hostile work environment
for Plaintiffs was actually, and extensively, litigated through a

---

[4] Under §§ 1981 and 1983, Plaintiffs claim that the City of
Camden is liable because final decisionmakers for the City (and
not the State) were involved in creating the hostile work
environment and in failing to promote Plaintiffs based on their
race.  Assuming that the "final decisionmaker" was indeed an
employee or official of the municipality rather than of the
state, in order to establish municipal liability based on the
conduct of the final decisionmaker, the Plaintiffs must show that
(1) the policymaker "promulgate[d] a generally applicable
statement of policy and the subsequent act complained of [was]
simply an implementation of that policy;" (2) the policymaker
affirmatively violated federal law himself, even though no formal
policy was announced; or (3) "the policymaker [] failed to act
affirmatively at all, though the need to take some action to
control the agents of the government [was] so obvious, and the
inadequacy of existing practice so likely to result in the
violation of constitutional rights, that the policymaker can
reasonably be said to have been deliberately indifferent to the
need."  Natale v. Camden County Correctional Facility, 318 F.3d
575, 584 (3d Cir. 2003).  Thus, Plaintiffs must show either that
a final municipal decisionmaker affirmatively caused the hostile
work environment and other discriminatory treatment of
Plaintiffs, or that such a decisionmaker was deliberately
indifferent to the hostile work environment or discrimination.
Id.; see San Filippo v. Bongiovanni, 30 F.3d 424, 445 (3d Cir.
1994) ("a municipality can be liable under § 1983 only where its
policies are the moving force behind the constitutional
violation.") (quoting City of Canton, Ohio v. Harris, 489 U.S.
378, 388-89 (1989)).

three week trial and post-trial motions regarding the sufficiency of the evidence.  It was properly raised by the pleadings, submitted for determination to the jury, determined by the jury and affirmed in the form of a judgment by the Magistrate Judge and the Court as successor Judge.  See United Federal Leasing, Inc. v. United States, 126 F. App'x 60, 61 (3d Cir. 2005) ("An issue is actually litigated when it is properly raised, by pleadings or otherwise, is submitted for determination, and is determined.") (citing O'Leary v. Liberty Mut. Ins. Co., 923 F.2d 1062, 1066 (3d Cir. 1991)).

The jury verdict was subject to a final and valid judgment in this Court's opinion in Hailey II.  It is final because it is "sufficiently firm to be accorded conclusive effect."  Henglein v. Colt Industries Operating Corp., 260 F.3d 201, 209-10 (3d Cir. 2001); In re Docteroff, 133 F.3d 210, 216 (3d Cir. 1997); see In re Brown, 951 F.2d 564, 569 (3d Cir. 1991) ("Unlike claim preclusion, the effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable.").  It is valid because it was rendered by a court of competent subject matter jurisdiction and Defendants have submitted to the jurisdiction of the Court.  See O'Leary, 923 F.2d at 1066.

Finally, the issue of whether Plaintiffs endured a hostile work environment was essential to the judgment in Hailey II for it established liability under NJLAD against all Defendants and

13

resulted in a combined verdict of $386,000 in favor of Plaintiffs.

The elements of collateral estoppel being satisfied, the Court concludes that Plaintiffs need not relitigate, and Defendants are precluded from challenging, the previous NJLAD finding against the City of Camden that Plaintiffs endured a hostile work environment at the Camden Fire Department.  More specifically, the Court finds as a matter of law that the jury previously determined that each plaintiff proved these four facts arising from their employment by the City of Camden: (1) Plaintiffs suffered intentional discrimination because of their race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected them; and (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position.  Nevertheless, Plaintiffs must still establish that the City may be held liable for this hostile work environment by proving during the retrial that the City through its policymaker caused by way of a formal policy, or actual participation in, or deliberate indifference to, the conduct within the Fire Department that created a racially hostile work environment for the Plaintiffs.  Partial summary judgment will be entered for Plaintiffs establishing these facts against the City of Camden with regard to Plaintiffs' claim of racially hostile work environment under 42 U.S.C. §§ 1981 and 1983.

**B.    Compensatory Damages and Double Recovery**

In opposition to Plaintiffs' motion for partial summary judgment Defendants argue that Plaintiffs cannot recover compensatory damages beyond those already awarded to Plaintiffs by the jury under NJLAD, for any additional compensatory damages would result in an impermissible double recovery.  Plaintiffs respond that in certain circumstances, separate compensatory damages may be awarded for similar state and federal causes of action.  In this circumstance, as will be explained at greater length below, to allow Plaintiffs to receive additional compensatory damages for the same injury will not be allowed.

"[I]t goes without saying that the courts can and should preclude double recovery by an individual."  E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 297 (2002) (internal citations and punctuation omitted).  For this reason, the Third Circuit has made clear "that a plaintiff whose case concerns a single course of conduct . . . and a single injury . . . [may not] recover those profits twice or thrice over for each legal theory advanced in favor of liability."  Fineman v. Armstrong World Industries, Inc., 980 F.2d 171, 218 (3d Cir. 1992).  This well-established principle applies equally to civil rights litigation where a plaintiff maintains that identical misconduct violated similar federal and state anti-discrimination law.  See Bogan v. City of Boston, 489 F.3d 417, 425-26 (1st Cir. 2007) ("[I]f a § 1983 claim and a state claim arise from the same operative facts, and

15

seek identical relief, an award of damages under both theories will constitute double recovery."); see also Anderson v. Group Hospitalization, Inc., 820 F.2d 465, 473 (D.C. Cir. 1987) (compensatory damages awarded under both § 1981 and Title VII for same time period would constitute impermissible double recovery).

In the present action, and as made abundantly clear through Plaintiffs' compelling argument regarding collateral estoppel, Plaintiffs' claims regarding hostile work environment under NJLAD and Sections 1981 and 1983 arise from the same facts and the same injuries and seek the same remedy -- lost wages and all other losses caused by the hostile work environment they endured.[5]  To allow Plaintiffs to recover additional compensatory damages for the same injury would yield the unwarranted windfall recovery prohibited by the Supreme Court and our own circuit's jurisprudence.  See Waffle House, 534 U.S. at 297; Fineman, 980 F.2d at 218.

In response, Plaintiffs point to Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 571-72 (3d Cir. 2002), suggesting that it stands for the proposition that separate awards for compensatory damages can be awarded for similar state and federal causes of action in the same case.  But Gagliardo is no help to

---

[5] Plaintiffs argue, strangely, that perhaps some other form of compensatory damages could be awarded, beyond lost wages and "other damages . . . excluding lost wages."  The Court can think of nothing beyond these broad and all-inclusive awards to which Plaintiffs could be entitled.

Plaintiffs.  In Gagliardo, the Third Circuit held that where a jury awards damages under both Title VII, which has a statutory damages cap, and a virtually identical state anti-discrimination statute without such a cap, the district court is free to apportion the jury's single award of compensatory damages amongst the two claims, so that the injured plaintiff may receive the full amount of compensatory damages, beyond what would have been permitted had the plaintiff succeeded only on the Title VII claim.  311 F.3d at 571-72.  Of particular significance, in Gagliardo the jury did not provide two separate and duplicative awards (one for each claim), but instead found the total amount of compensatory damages but did not apportion the damages between the two claims.  Id. at 570.  By contrast, Sections 1981 and 1983 have no damages cap and so additional recovery under NJLAD is needed to make Plaintiffs whole.  Further, Plaintiffs are asking the Court to permit the jury to award separate and duplicative compensatory damages awards for the same injuries, not to apportion a single award of compensatory damages between two causes of action.  Gagliardo does not support such a position. Plaintiffs have received the full amount of compensatory damages to which they are due concerning a racially hostile work environment for the period in question, and the sole remaining issue under Sections 1981 and 1983 is municipal liability of the City of Camden for Plaintiffs' racially hostile work environment.

Finally, Plaintiffs' counsel has identified no item of

compensatory damages for the claims under Sections 1981 and 1983 that is beyond the damages already presented to the jury and awarded in the jury's verdict against the City under NJLAD for a racially hostile work environment.  The same recovery would be sought, albeit under the label of Section 1981 and 1983.  It follows that Plaintiffs are collaterally estopped from claiming separate damages from the City for their Sections 1981 and 1983 claims of hostile work environment, if the City is found liable. Likewise, the City is estopped, in the event municipal liability is found under Sections 1981 and 1983, from seeking a determination of compensatory damages that is less than the jury already found for these same injuries under the NJLAD.

### C.   Evidence of Discrimination and Retaliation After August 20, 2001

Defendants argue that Plaintiffs should be barred from presenting any evidence of discrimination and retaliation after August 20, 2001, the day that Plaintiffs filed their initial complaint in this action.  The Court will reject this argument, for this issue has previously been litigated and decided by the Magistrate Judge in Hailey I and affirmed by this Court in Hailey II, as discussed in Part II.  Hailey I, 2006 WL 1875402, at *8-10.  In Hailey I the Magistrate Judge directly confronted and rejected this same argument and under the rule of the case doctrine Defendants are not free to raise this issue once again. See Christianson v. Colt Industries Operating Corp., 486 U.S.

18

800, 816 (1988). Moreover, Defendants' suggestion that they will
be prejudiced by the admission of such evidence because they have
not conducted any discovery on this issue is belied by the fact
that there has already been a trial in which the evidence was
admitted (without any real objection) and further that Plaintiffs
have since filed a separate action alleging continuing
discrimination and retaliation after the first trial.  It is
simply disingenuous for Defendants to argue now, five years after
the evidence of continuing conduct was presented to the jury in
2004 and three years after this issue was decided by the
Magistrate Judge, that they had no notice that Plaintiffs might
present evidence of discrimination and/or retaliation after
August 20, 2001.  The Court will deny Defendants' motion <u>in
limine</u> to the extent that it seeks to preclude all evidence of
discrimination and retaliation after August 20, 2001.

The Court agrees, however, that Plaintiffs may not present
evidence of discrimination or retaliation that arose after
December 9, 2004, the date of the jury verdict in the first
trial, for this conduct is the subject of a separate civil
action, <u>Hailey v. City of Camden</u>, Civ. No. 06-5897 (JBS), and
should be raised only in that case.  Plaintiffs cannot seek the
same remedy for the same conduct in two separate actions.  <u>See
Waffle House, Inc.</u>, 534 U.S. at 297.  The jury verdict date will
also form the cut-off for punitive damages in the retrial, since
Plaintiffs are also seeking punitive damages in the subsequent

19

civil case.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs'
motion for partial summary judgment and preclude Defendant City
of Camden from relitigating the issue of whether Plaintiffs
suffered a hostile work environment under Sections 1981 and 1983.
Instead, the sole remaining liability issue regarding hostile
work environment is whether the municipality may be held liable
for that hostile work environment under the theory of municipal
liability.  In addition, the Court finds that if Plaintiffs prove
municipal liability for hostile work environment under Sections
1981 and 1983 against Camden, then Plaintiffs' damages under
Sections 1981 or 1983 against the City of Camden are equal to the
amount of Camden's NJLAD verdict for the identical conduct,
namely lost wages of $116,000 and other losses of $50,000 for
Crowder, and lost wages of $70,000 and other losses of $50,000 in
favor of Hailey, because Plaintiffs and Camden are estopped from
asserting that the compensatory damages for these same harms are
different than the jury has previously determined under the
NJLAD.  Finally, the Court will deny Defendants' motion in limine
on the grounds that this issue has already been decided, except
that Plaintiffs should not be permitted to offer evidence of
discrimination or retaliation or punitive damages that arose
after December 9, 2004, the date of the jury verdict in the first
trial, all without prejudice to Plaintiffs' right to seek such

damages for conduct arising after December 9, 2004 in Plaintiffs'

second suit, <u>Hailey, et al. v. City of Camden</u>, Civ. No. 06-5897

(JBS).

    The accompanying Order will be entered.


                **s/ Jerome B. Simandle**
               Jerome B. Simandle
               United States District Judge